STATE OF NEBRASKA, APPELLEE, V. GEARY L. DANDRIDGE, APPELLANT.

511 N.W.2d 527

Filed May 4, 1993.   No. A-92-414.

Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hays for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

SIEVERS, Chief Judge, and HANNON and IRWIN, Judges.

IRWIN, Judge.

In this case, we review criminal convictions for possession of a controlled substance, cocaine, Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 1992), and being a felon in possession of a firearm, Neb. Rev. Stat. § 28-1206 (Reissue 1989). Appellant was determined to be a habitual criminal under Neb. Rev. Stat. § 29-2221 (Reissue 1989). Appellant argues that the district court erred by (1) overruling his motion to prohibit joinder of the two substantive charges, (2) overruling his motion to dismiss at the close of the evidence, (3) finding him to be a habitual criminal, and (4) imposing an excessive sentence. He also argues a fifth error on appeal—the evidence is insufficient to support the verdicts. We affirm for the reasons discussed below.

## I. FACTUAL BACKGROUND

On September 27, 1991, officers of the Lincoln Police Department executed a search warrant shortly before midnight at the residence of Geary L. Dandridge, appellant. The residence is located at 645 North 30th Street, Lincoln, Nebraska. No issue regarding the warrant is raised by appellant.

Four persons, including appellant, were found in the home.

Appellant was found in the bathroom shower. He was unclothed but dry at the time. The other three persons were located in the kitchen. Also found in the bathroom with appellant were a pair of jeans, a shirt, a pair of shoes, and some towels, which were all in a pile next to the bathroom cabinet. The police allowed appellant to put on the jeans that were in the pile of clothes. Found by the police in the pile of clothes was a 9-mm handgun, which was obscured from view by the clothes. On the counter next to the sink, they found a pair of scissors with a wad of cotton held in the tips; a cigarette lighter; an item of "narcotics paraphernalia," which was apparently a smoking device of some type; and some money. The pile of clothing also yielded a man's billfold containing the Nebraska driver's license of appellant.

On top of the toilet tank, a shot glass containing fluid was discovered. A small piece of an off-white, hard substance was floating in the fluid. This substance ultimately tested positive for cocaine base, otherwise known as crack cocaine. The shot glass was processed for fingerprints, and one latent print was found. When the latent print was compared to the known fingerprint of appellant, it was found that the prints did not match. No fingerprints of any value for comparison purposes were found on the gun, clip, or shells.

Several people testified in appellant's case in chief, including Donald Shubert, Jr., and Jason Shubert, Donald's son. Both of these individuals claimed that the handgun found in the pile with appellant's clothing belonged to Donald Shubert. Appellant stipulated that he had a prior felony conviction. He testified that the items recovered by the police were not his.

Appellant was subsequently convicted of both counts charged in the information. A hearing on the habitual criminal allegation was held, and appellant was found to be a habitual criminal within the meaning of the statute. He was then sentenced to a period of incarceration of not less than 15 nor more than 30 years on each count, the sentences to run concurrently. Additionally, appellant was taxed with the costs of the prosecution. He was given credit for 218 days served in custody. Appellant has timely filed his appeal with this court.

## II. DISCUSSION

Appellant asserts that the trial court erred by allowing the felon in possession of a firearm count to be tried together with the drug possession count. Proof of appellant's prior felony conviction was introduced as an element of the possession of a firearm charge. Such proof would have been inadmissible in a separate trial for possession of illegal drugs unless appellant chose to testify. Appellant contends on appeal, as he contended at the hearing on the motion to sever, that he was impermissibly prejudiced by the trial court's refusal to sever the counts.

### 1. JOINDER GENERALLY

The trial court's authority to join the offenses with which appellant was charged may be found in Neb. Rev. Stat. § 29-2002 (Reissue 1989), which provides:

(1) Two or more offenses may be charged in the same indictment, information, or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

. . . .

(4) If it appears that a defendant or the state would be prejudiced by a joinder of offenses . . . in an indictment, information, or complaint, or by such joinder of offenses in separate indictments, informations, or complaints for trial together, the court may order an election for separate trials of counts, indictments, informations, or complaints, grant a severance of defendants, or provide whatever other relief justice requires.

A trial court's ruling on a motion for consolidation of prosecutions properly joinable will not be disturbed on appeal absent an abuse of discretion. *State v. Illig*, 237 Neb. 598, 467 N.W.2d 375 (1991); *State v. Thompson*, 231 Neb. 771, 438 N.W.2d 131 (1989). Whether or not separate trials are required depends upon a showing by the defendant that prejudice will result from a joint trial. *State v. Illig, supra*; *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989).

## 2. JOINDER ANALYSIS

### (a) Are the Charges Joinable?

In order to determine if offenses are properly joinable under § 29-2002(1), we must first determine how the offenses are related. *State v. Illig, supra.*

In *State v. Brehmer*, 211 Neb. 29, 317 N.W.2d 885 (1982), the Nebraska Supreme Court dealt with the phrase "same act or transaction," which phrase is contained in § 29-2002. The court noted that no definition had been propounded by the Supreme Court prior to *Brehmer*. The court discussed the fact that several federal courts have dealt with the phrase "same act or transaction," since that phrase is also included in the federal joinder rules under Fed. R. Crim. P. 8. The Nebraska court noted that joinder has as one of its goals maximum trial convenience consistent with minimum prejudice to the defendant. The *Brehmer* court went on to quote with approval an Oregon test for determination of whether offenses are based on the same act or transaction, which test stated that " 'the two charges arise out of the same act or transaction if they are so closely linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge.' " *State v. Brehmer*, 211 Neb. at 36-37, 317 N.W.2d at 890, quoting *State v. Fitzgerald*, 267 Or. 266, 516 P.2d 1280 (1973). The court went on in *Brehmer* to note inferentially that if substantially the same facts need be adduced in order to prove each of the offenses, then they arise from the same transaction.

In Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 17.1 at 762 (2d ed. 1992), the phrase "same transaction" was discussed as follows: "[U]nder the general notion that the offenses must arise out of the same sequence of events [same transaction], it is sufficient that they were occurring simultaneously but yet not part of a common scheme."

The U.S. Courts of Appeals for the Fifth and Eighth Circuits have dealt with the phrase "same act or transaction" also. In *United States v. Park*, 531 F.2d 754 (5th Cir. 1976), the appellant argued that finding drugs and a gun during a search of his home was an insufficient nexus to say that the charges

arose from the same act or transaction. Citing *United States v. Pietras*, 501 F.2d 182 (8th Cir. 1974), *cert. denied* 419 U.S. 1071, 95 S. Ct. 660, 42 L. Ed. 2d 668, the court approved the joinder and held that the offenses were based on the same transaction. *Pietras* involved a defendant charged with armed bank robbery, kidnapping, transportation of a firearm in interstate commerce by a convicted felon, transportation of stolen property, and possession of an unregistered firearm. Pietras sought to sever the count relating to the possession of an unregistered firearm from the other counts, since the weapon was not used in connection with the robbery, but was merely found in the van. No error was found in the joinder. Likewise, in *United States v. Abshire*, 471 F.2d 116 (5th Cir. 1972), the court of appeals found that the trial court had not erred in refusing to sever charges of interstate transportation of a stolen motor vehicle and interstate transportation of a firearm by a felon. Both offenses were found to have arisen out of the same sequence of events, and joinder was proper.

As defined in *Park*, the word "transaction" has a flexible meaning. It may encompass a series of occurrences, depending not so much upon the immediacy of their connection as upon their logical relationship.

The two possession offenses in the case before us occurred at the same time and same place and are logically connected. In the facts before us regarding constructive possession of a gun and drugs by appellant, the offenses are both part of the same transaction, as discussed above. They occurred simultaneously, even though they were not part of a common scheme. They were closely linked in time, place, and circumstance. A complete account of one crime could not be related without detailing a substantial amount of evidence related to the other crime. The charges were joinable under § 29-2002.

### (b) Although Joinable, Should Charges be Severed Due to Prejudice?

The above discussion does not end the analysis of the joinder issue. Even if charges are properly "joined" in the information, the trial court must still determine if separate trials are dictated due to prejudice which might result to the defendant. *State v.*

*Pope*, 192 Neb. 755, 224 N.W.2d 521 (1974).

The defendant bears the burden of proving that prejudice will result from joinder. *State v. Illig*, 237 Neb. 598, 467 N.W.2d 375 (1991).

Section 29-2002(4) states:

> If it appears that a defendant or the state would be prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder of offenses in separate indictments, informations, or complaints for trial together, the court may order an election for separate trials of counts, indictments, informations, or complaints, grant a severance of defendants, or provide whatever other relief justice requires.

The State relies on *Illig* as authority for its position that the charges should not be severed. Illig was charged with second degree murder, use of a firearm in the commission of a felony, and being a felon in possession of a firearm. The Nebraska Supreme Court held that the felon in possession of a firearm offense occurred at the same time as the other two offenses and that, therefore, all offenses were properly joined because they were based on the same act or transaction.

The court noted that even where joinder is proper, severance may still be required under § 29-2002(4) if the defense is unduly prejudiced. However, the *Illig* court found that

> [i]n the case at bar, the crimes are connected. The crimes occurred at the same time and arose from a single act or event, namely, the shooting of Smith. The potential witnesses, the *crime scene, and the weapon were involved in all three crimes. These crimes were not unconnected.*

(Emphasis supplied.) 237 Neb. at 613, 467 N.W.2d at 385.

The fact that the three crimes in *Illig* were *connected* is of paramount importance and is a critical distinction. By connection, it is meant that the crimes are *connected to each other*. In *Illig*, the gun possessed by the felon was used to commit the murder.

There is no connection between the two crimes charged in the case before us. The gun had no relationship to the drug charge. An argument could possibly be made that if the drug charge

were a delivery charge and the defendant were a dealer, then perhaps the possession of the gun would be connected to the drug possession, since guns are often tools of the drug-dealing trade. That is not the situation here.

This court is cognizant of the Nebraska Supreme Court's ruling in the case *State v. Evans*, 235 Neb. 575, 456 N.W.2d 739 (1990). In that case, the defendant was convicted, in a single trial, of committing robberies, use of a firearm in the commission of felonies, and possession of a firearm by a felon. The court found no abuse of discretion in the trial court's ruling that joinder of all charges was proper. However, *Evans* is distinguishable from the case before us, because in *Evans* the crimes charged were connected, just as in *Illig*, i.e., the weapon was used to commit the robberies. In the case before us, it cannot be shown that there is any such connection between the drug possession charge and the firearm possession charge.

Especially significant about the charges not being severed in the case before us is that when the charges were not severed, appellant then had his status as a convicted felon injected into the trial of the drug possession charge. If the charges had been severed, evidence of appellant's status as a convicted felon could not have been introduced at a separate drug possession trial unless he chose to testify, and then, the evidence would have borne only on his credibility.

Having made these remarks about joinder of offenses which, while arising from the same transaction, are not related or connected to each other, we must bear in mind that a curative instruction may resolve the potential problem of a jury's improper use of a defendant's felon status. The Nebraska Supreme Court has held on many occasions that a potentially prejudicial evidentiary problem may be cured by appropriate instruction. It has specifically held that a court which admits evidence admissible for a certain purpose only may by an instruction limit the evidence to the purpose for which it is admissible and caution the jury against its improper use. *State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991); *State v. Stewart*, 219 Neb. 347, 363 N.W.2d 368 (1985); *Davis v. State*, 171 Neb. 333, 106 N.W.2d 490 (1960); *Grandsinger v. State*, 161 Neb. 419, 73 N.W.2d 632 (1955); *Jurgensen v. State*, 135 Neb.

537, 283 N.W. 228 (1939).

The federal courts have held that instruction may prevent prejudice to a defendant in situations factually similar to this case.

In *Breeland v. Blackburn*, 786 F.2d 1239 (5th Cir. 1986), the court of appeals reviewed a state court conviction of aggravated burglary and possession of a firearm by a convicted felon and held that the state court's denial of severance did not violate the defendant's right to due process and fair trial under the U.S. Constitution. The lower court had found that the two charges arose out of the same transaction. The court of appeals noted that absent an objection to the jury instructions, there was an assumption that the lower court's instructions adequately dealt with the possibility of undue influence being placed upon the prior felony conviction, which, as in the case at bar, was a requisite element of the charge of possession of a firearm by a convicted felon. The *Breeland* court noted that the instructions to the jury were not included in the record, but that the record reflected that no objections were made to the jury charge.

The jury instructions were not included in the transcript prepared for the instant appeal either. The only mention of instructions is contained in the bill of exceptions and regards the instruction conference. The attorneys were raising any objections they had to the proposed instructions. The instructions were referred to by number. They were not read into the record, and no rule requires this. The only dialog concerning the prior felony conviction appears to be as follows: "THE COURT: Twelve is evidence has been received showing that the defendant has been convicted of a felony. [State's attorney]: No objection. [Defense counsel]: No objection."

The Nebraska Supreme Court has held that where a decision has been rendered by a court of general jurisdiction, the correctness of the decision or ruling from that court is presumed. An appellant must establish the contrary by submitting an appropriate record. *Hyslop v. State*, 159 Neb. 802, 68 N.W.2d 698 (1955); *Darlington v. State*, 153 Neb. 274, 44 N.W.2d 468 (1950); *Salistean v. State*, 115 Neb. 838, 215 N.W. 107 (1927). Trial judges are charged with the duty of

conducting criminal trials in such a manner that the accused may have a fair and impartial trial, and unless the record discloses an objection to a judge's actions, such cannot be reviewed on appeal. *Hyslop v. State, supra.* Meaningful appellate review requires a record that elucidates the factors relating to a lower court's decision. *Spittler v. Nicola,* 239 Neb. 972, 479 N.W.2d 803 (1992).

Like the *Breeland* court, we note that no objections were made to the pertinent jury instruction, and we must assume that the instructions adequately dealt with the problem regarding the felon status of appellant in its proper purpose and use by the jury.

The determination of whether or not prejudice resulted from this joinder is aided by the record. The evidence of appellant's guilt was substantial. In addition, the State placed no undue emphasis upon the prior felony conviction of appellant, cf. *Panzavecchia v. Wainwright,* 658 F.2d 337 (5th Cir. 1981), thus diminishing the possibility of prejudice.

An appellate court must determine whether or not the joinder of offenses was prejudicial to the defendant. *State v. Illig,* 237 Neb. 598, 467 N.W.2d 375 (1991). Our conclusion regarding the issue of prejudice due to the joinder must be that even though the crimes were unrelated, in the sense that the word is used in *Illig* and *Evans,* it cannot be an abuse of discretion for the trial court to refuse to force the State to try the two charges separately where appellant fell short in his burden of showing the possibility of prejudice under § 29-2002(4).

We find no merit to appellant's first assignment of error.

### 3. OVERRULING MOTION TO DISMISS

Appellant asserts that his motion to dismiss, which was made after both the State and appellant had rested, should have been sustained. On a criminal defendant's motion to dismiss for insufficient evidence of the crime charged against the defendant, the State is entitled to have all its relevant evidence accepted as true, the benefit of every inference reasonably drawn from the evidence, and every controverted fact resolved in its favor. In a criminal case, a court can direct a verdict only when (1) there is a complete failure of evidence to establish an

essential element of the crime charged or (2) the evidence is so doubtful in character and lacking in probative value that a finding of guilt based on such evidence cannot be sustained. *State v. Brown*, 235 Neb. 374, 455 N.W.2d 547 (1990).

In the case at hand, the evidence and the reasonable inferences to be drawn from it, taken as a whole, as we are required to do, establish appellant's guilt beyond a reasonable doubt. The direct and circumstantial evidence were sufficient to find that appellant did in fact possess the gun and the drugs.

After a jury has considered the evidence in light of the applicable governing rules and returned a verdict of guilty, that verdict may not, as a matter of law, be set aside on appeal for insufficiency of the evidence if the evidence supports some rational theory of guilt. *State v. Ohler*, 178 Neb. 596, 134 N.W.2d 265 (1965). This assignment of error is without merit.

### 4. HABITUAL CRIMINAL

The law in the State of Nebraska regarding use of prior convictions in an enhancement proceeding is clear. "[T]o prove a prior conviction for enhancement purposes, the State need only show that at the time of the prior conviction the defendant had, or waived, counsel." *State v. Oliver*, 230 Neb. 864, 869, 434 N.W.2d 293, 297 (1989). It is also clear that an enhancement proceeding is neither the time nor the place to launch a collateral attack on a prior conviction. *State v. Wiltshire*, 241 Neb. 817, 491 N.W.2d 324 (1992); *State v. Oliver, supra*. Appellant is incorrect when he states that at the time of his enhancement proceeding there was no recognized procedure for challenging the admission of "an un-*Boykin*ized plea." Brief for appellant at 29. There is still no precise name to the procedure by which one must attack a prior conviction. However, *Oliver* was decided in 1989, and it states as follows:

> Objections to the validity of a prior conviction offered for the purpose of sentence enhancement, beyond the issue of whether the defendant had counsel or waived the right to counsel, constitute a collateral attack on the judgment, and must be raised either by a direct appeal from the prior conviction *or in separate proceedings commenced expressly for the purpose of setting aside the prior*

*conviction.*
(Emphasis supplied.) 230 Neb. at 869, 434 N.W.2d at 297. It is clear, therefore, that no matter how one chooses to caption the pleading, a separate proceeding of some sort must be initiated to collaterally attack a prior conviction if the issue is other than whether appellant had counsel in the case.

Additionally, appellant made no objection at the enhancement proceeding to the offer of exhibit 1, which was a certified copy of appellant's conviction for robbery and use of a firearm in the commission of a felony from 1979. Therefore, no error may be predicated on the admission of exhibit 1. See, *State v. Threet*, 225 Neb. 682, 407 N.W.2d 766 (1987); *State v. Roggenkamp*, 224 Neb. 914, 402 N.W.2d 682 (1987). Exhibit 2, a certified copy of appellant's conviction in 1977 for possession of amobarbital, shows that appellant was represented by counsel and that appellant entered a plea of no contest to that charge. Consequently, under the current state of the law in Nebraska, appellant may not, at the enhancement proceeding, attack a prior conviction regarding any other issue. Therefore, the court properly admitted exhibit 2 as evidence of another prior felony conviction. The trial court properly found that the State had demonstrated two previous felony convictions and, consequently, sentenced appellant as a habitual criminal. Appellant's assignment of error in this regard is also without merit.

### 5. Excessive Sentence

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Hall*, 242 Neb. 92, 492 N.W.2d 884 (1992).

Appellant appears to be the embodiment of the concept of a habitual offender. At the age of 13, he acquired a conviction for burglary. At age 15, he was convicted of statutory rape and theft. At age 17, he was convicted of destruction of property. At age 19, he was convicted of carrying a concealed weapon, petty larceny, and resisting arrest and was placed on probation. When he was 20, his probation was revoked and he was sentenced to 1 to 2 years in the state penitentiary. The revocation occurred as a result of appellant's involvement in a shooting incident in which

an individual was killed following a quarrel over a debt. At age 22, appellant was convicted of theft in Louisiana and of carrying a concealed weapon in Nebraska. At age 23, appellant was convicted of possession of cocaine. At age 26, appellant was convicted of possession of a controlled substance, which is the 1977 conviction used in the enhancement proceeding. At age 28, appellant was convicted of robbery and use of a firearm in the commission of a felony, which is the 1979 conviction used in the enhancement proceeding. Appellant holds out to the court his law-abiding behavior, stating that "[w]hile it is true that [he] has served prison sentences on four prior occasions . . . he has only been convicted of a single misdemeanor offense since his last felony conviction in 1979." Brief for appellant at 36. While it is true that appellant has only one misdemeanor conviction since his last felony conviction in 1979, the reason for this is that appellant was incarcerated in the Nebraska State Penitentiary from 1979 until September 27, 1990. This argument has the same persuasive value as that of the murderer who, after killing both his parents, pled for the court's mercy, arguing that he was an orphan. The trial court's sentence of 15 to 30 years' imprisonment on each charge was quite clearly not excessive in this case, and appellant's contention in this regard is without merit.

### 6. Sufficiency of the Evidence

The standard of review for this assigned error is the same as that discussed earlier regarding the issue of the motion to dismiss. We reach the same conclusion and find no merit to this argument.

### III. CONCLUSION

For the reasons discussed, we affirm the convictions and sentences.

AFFIRMED.