STATE OF NEBRASKA, APPELLEE, V.
CHARLES W. GRAY, APPELLANT.
612 N.W. 2d 507

Filed June 30, 2000.   No. S-99-896.

Paul J. Vaughan, of Johnson & Vaughan, P.C., for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Charles W. Gray appeals the order of the district court for Washington County which denied Gray's motion for postconviction relief without an evidentiary hearing. For the reasons recited below, we affirm.

## STATEMENT OF FACTS

On July 5, 1990, the State filed an information against Gray charging him with first degree murder and use of a firearm to commit a felony in connection with the May 13, 1990, death of Tatum McIntosh. On February 4, 1991, Gray entered a plea of guilty to an amended information charging him with one count of second degree murder. On March 8, 1991, he received a flat life sentence of imprisonment.

Gray filed a "petition" for postconviction relief under Neb. Rev. Stat. § 29-3001 (Reissue 1995), dated October 4, 1994. Because the amended information upon which Gray was charged omitted malice as an element of second degree murder, under the line of cases subsequently overruled by *State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998), the district court granted Gray postconviction relief, vacating his conviction and sentence on September 21, 1995.

The State filed an amended information on October 23, 1995, again charging Gray with first degree murder and use of a firearm to commit a felony. After plea negotiations, on October 30, 1996, the State filed an amended information charging Gray with one count of second degree murder. On October 31, Gray entered a plea of no contest, and the district court found Gray guilty of the charge of second degree murder. A presentence investigation was ordered.

The presentence report dated December 5, 1996, states on the first page that the range of sentences applicable to Gray's second conviction on October 31, 1996, for the second degree murder committed on May 13, 1990, was 10 years' to life imprisonment. On January 16, 1997, the district court imposed upon Gray on this subsequent second degree murder conviction a flat life sentence. Gray was not given credit on this sentence for the time he had served in the penitentiary under his prior conviction.

Gray's trial counsel appealed this second conviction, arguing that Gray's sentence was excessive. The sentence was summarily affirmed by this court in *State v. Gray*, 252 Neb. xix (case No. S-97-118, July 23, 1997).

Gray filed the instant postconviction action on March 20, 1998. In its response to Gray's motion, the State filed the affidavit of Ron Riethmuller, the records administrator for the

Nebraska Department of Correctional Services (DCS), in which he states, inter alia, that Gray was "re-sentenced" on January 16, 1997, to a term of life imprisonment and that Gray's "earliest parole eligibility date on his sentence of January 16, 1997 is January 15, 2002." Riethmuller's affidavit, prepared during Gray's incarceration on his second conviction, is dated February 24, 1999. The district court denied Gray's amended motion for postconviction relief without an evidentiary hearing. Gray appeals.

## ASSIGNMENTS OF ERROR

On appeal, Gray has assigned four errors, which combine to form three assignments of error. Gray claims, restated, that the district court erred (1) in failing to find that Gray was denied effective assistance of counsel in his first postconviction action because his first postconviction attorney failed to inform Gray that he would not receive credit for time served pursuant to the first conviction if Gray was successful in having his first conviction set aside and thereafter convicted and resentenced to life imprisonment; (2) in failing to find that Gray was denied effective assistance of trial counsel at his second sentencing, because his trial counsel at the sentencing for his second conviction failed to object to the district court's purported ex post facto application of sentencing laws, such that Gray was erroneously sentenced under the 1995 amended sentencing statute rather than the sentencing statutes in effect in 1990 when he committed the crime; and (3) in denying Gray an evidentiary hearing on his motion for postconviction relief.

## STANDARDS OF REVIEW

A criminal defendant requesting postconviction relief must establish the basis for such relief, and the factual findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Ryan*, 257 Neb. 635, 601 N.W.2d 473 (1999); *State v. Smith*, 256 Neb. 705, 592 N.W.2d 143 (1999). A criminal defendant moving for postconviction relief must allege facts which, if proved, constitute a denial or violation of his or her rights under the state or federal Constitution. *State v. Ryan, supra*; *State v. Smith, supra*.

■ When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below. *Nelson v. Lusterstone Surfacing Co.*, 258 Neb. 678, 605 N.W.2d 136 (2000).

## ANALYSIS

As more fully explained below, because the files and records in this case affirmatively show that Gray was not entitled to postconviction relief, we conclude that the district court did not err in denying Gray an evidentiary hearing, and we affirm the district court's order denying Gray's motion for postconviction relief.

### Ineffectiveness of Postconviction Counsel.

■ Gray claims that his first postconviction counsel was ineffective. Specifically, Gray argues that in connection with his first postconviction proceeding, his postconviction attorney failed to advise him that under established law, he would not receive credit for time served pursuant to the first conviction if Gray was successful in his postconviction action and was again convicted and sentenced to life in prison in a subsequent criminal proceeding. See, e.g., *State v. Anderson*, 252 Neb. 675, 564 N.W.2d 581 (1997) (holding that it is a proper sentence to deny credit for time served to criminal defendant who received life sentence on second conviction after first conviction was set aside); *State v. Rust*, 247 Neb. 503, 528 N.W.2d 320 (1995), *cert. denied* 516 U.S. 905, 116 S. Ct. 271, 133 L. Ed. 2d 193 (same). Because Nebraska does not recognize a constitutional claim based upon ineffectiveness of postconviction counsel, Gray's assignment of error is without merit.

In *State v. Stewart*, 242 Neb. 712, 496 N.W.2d 524 (1993), *cert. denied, Abdullah v. Nebraska*, 510 U.S. 829, 114 S. Ct. 97, 126 L. Ed. 2d 64, we considered and rejected a criminal defendant's claim of ineffective assistance of counsel in a postconviction case. In *Stewart*, we stated:

> The federal constitution has been interpreted to provide that a defendant in a criminal case where imprisonment is imposed has the right to assistance of counsel. *Strickland*

*v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). . . . The U.S. Supreme Court has also held that the assistance of counsel provision in the U.S. Constitution applies to direct appeals only. See *Pennsylvania v. Finley*, 481 U.S. 551, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987). . . . As the *Finley* court stated, postconviction relief is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature. . . . States have no obligation to provide a postconviction relief procedure, and when they do, the fundamental fairness mandated by the Due Process Clause of the U.S. Constitution does not require that the State supply a lawyer as well. . . .

In *Coleman v. Thompson*, [501] U.S. [722], 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991), the U.S. Supreme Court held that because there is no constitutional right to an attorney in state postconviction proceedings, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." [501 U.S. at 752]. The Nebraska Constitution's provision for assistance of counsel in a criminal case is no broader than its counterpart in the federal constitution. We, therefore, hold that a prisoner cannot claim constitutionally ineffective assistance of counsel as a result of an attorney's service in a postconviction proceeding.

242 Neb. at 719, 496 N.W.2d at 529.

Pursuant to *Stewart*, Gray cannot claim ineffective assistance of postconviction counsel. This assignment of error is without merit.

*Ineffectiveness of Trial Counsel at Second Sentencing.*

Gray argues that he is entitled to postconviction relief based upon trial counsel's ineffectiveness at Gray's second sentencing. Specifically, Gray argues that trial counsel was ineffective due to counsel's failure to object to the trial court's imposition of a sentence which was purportedly an ex post facto application of the 1995 amended sentencing statute to his 1990 crime. The record shows that Gray was not subject to an ex post facto application of sentencing laws, his trial counsel was not ineffective, and there is no merit to this assignment of error.

■ We have recently observed that "[a] law which purports to apply to events that occurred before the law's enactment, and which disadvantages a defendant by creating or enhancing penalties that did not exist when the offense was committed, is an ex post facto law and will not be endorsed by the courts." *State v. Urbano*, 256 Neb. 194, 207, 589 N.W.2d 144, 154 (1999). This ex post facto analysis applies when a statutory amendment changes the punishment of a crime. *Id.*

In 1990, when the crime was committed, Neb. Rev. Stat. § 28-105 (Reissue 1989) provided, inter alia, that the range of potential penalties for a defendant convicted of a Class IB felony, such as second degree murder, was not less than 10 years' imprisonment to a maximum sentence of life imprisonment. In 1995, § 28-105 was amended such that the minimum sentence for second degree murder was raised from 10 years' imprisonment to 20 years' imprisonment, with a maximum sentence of life imprisonment. See § 28-105 (Reissue 1995). Gray contends that following his second conviction for second degree murder, the district court utilized the 1995 amended statute when imposing a flat life sentence upon him on January 16, 1997, and that this sentence was an ex post facto application of the 1995 amendment to his 1990 crime. The record shows otherwise.

Gray correctly notes that under the amended sentencing statute relating to second degree murder, the increased minimum sentence of 20 years' imprisonment as opposed to 10 years' imprisonment affects the time when a prisoner will be eligible for parole. See Neb. Rev. Stat. § 83-1,110 (Reissue 1999). At his second sentencing, Gray received a determinate sentence of "life imprisonment," the same sentence as he had originally received in 1991. We note that in 1990, when Gray committed the second degree murder for which he was sentenced, Nebraska law did not permit the imposition of an indeterminate sentence for second degree murder. See *State v. Secret*, 246 Neb. 1002, 524 N.W.2d 551 (1994), *overruled on other grounds, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998).

■ When a flat sentence of "life imprisonment" is imposed and no minimum sentence is stated, by operation of law, the minimum sentence for parole eligibility purposes is the mini-

mum imposed by law under the statute. *Urbano, supra*; *State v. Thompson*, 189 Neb. 115, 201 N.W.2d 204 (1972). Therefore, by operation of law, the minimum sentence for parole eligibility purposes applicable to the life sentence imposed on January 16, 1997, is the minimum provided by law, or 20 years' imprisonment, unless the imposition of such minimum sentence would violate the prohibition against ex post facto laws. See *Urbano, supra*.

Because the 1995 amendment raised the minimum sentence for parole eligibility purposes on a flat life sentence for a second degree murder conviction from 10 years' imprisonment to 20 years' imprisonment, the 1995 amendment would disadvantage Gray. Thus, in this case, the prohibition against ex post facto laws requires that Gray's 1997 sentence cannot be imposed pursuant to the 1995 amendment. Gray's sentence must, therefore, be imposed pursuant to the sentencing structure in place at the time of the commission of the crime in 1990, rather than pursuant to the amended sentencing structure in place in 1997.

A review of Gray's presentence report, prepared following his second conviction and prior to his sentencing, indicates on the first page that the sentencing range to which Gray was subject was 10 years' to life imprisonment. Ten years was the statutory minimum in 1990 when Gray committed the crime. The trial court sentenced Gray to a flat life sentence, which was effectively a sentence in which the minimum sentence for parole eligibility purposes was the minimum provided by law, subject to ex post facto principles. See *Thompson, supra* (holding that eligibility for parole of defendant who received flat life sentence for second degree murder was same as though statutory minimum had been expressed as minimum of indeterminate sentence). Consistent therewith, the affidavit of Riethmuller shows that DCS has treated Gray's sentence as 10 years' to life imprisonment. The affidavit indicates that according to DCS, Gray will be eligible for parole at the earliest on January 15, 2002, which date is 5 years after the January 16, 1997, sentencing and one-half of the 10 years' imprisonment minimum. See § 83-1,110. Riethmuller's affidavit demonstrates that the district court imposed a sentence upon Gray based upon the sentencing statute in effect at the time Gray committed the crime. Because Gray

was not subject to an ex post facto application of the law, no objection by trial counsel was required, and the files and records show there was no ineffectiveness of trial counsel in relation to the imposition of the second sentence in 1997. This assignment of error is without merit.

*Denial of Evidentiary Hearing.*

Gray claims the district court erred in refusing to hold an evidentiary hearing on his motion for postconviction relief. This assignment of error is without merit.

The Nebraska Postconviction Act provides:

> A prisoner in custody under sentence and claiming a right to be released on the ground that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Constitution of this state or the Constitution of the United States, may file a verified motion at any time in the court which imposed such sentence, stating the grounds relied upon, and asking the court to vacate or set aside the sentence.
>
> Unless the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief, the court shall cause notice thereof to be served on the county attorney [and] grant a prompt hearing thereon . . . .

§ 29-3001.

■ We have recently observed that "[a]n evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proved, constitute an infringement of the movant's rights under the state or federal Constitution." *State v. Silvers*, 255 Neb. 702, 710, 587 N.W.2d 325, 332 (1998). See, also, *State v. Dandridge*, 255 Neb. 364, 585 N.W.2d 433 (1998). However, the district court need not conduct an evidentiary hearing on a motion for postconviction relief where the motion alleges only conclusions of fact or law or where the files and records affirmatively show that the criminal defendant is not entitled to any relief. *State v. Silvers, supra; State v. Dandridge, supra.* Such files and records may include the presentence report. *State v. Silvers, supra.*

As we have outlined above, the files and records affirmatively show that Gray is entitled to no relief, and therefore, the district court did not err in refusing to hold an evidentiary hearing on Gray's motion for postconviction relief.

## CONCLUSION

For the reasons outlined above, we conclude that Gray's motion for postconviction relief is without merit and that the district court did not err in denying Gray an evidentiary hearing. We affirm the district court's order denying Gray's motion for postconviction relief.

AFFIRMED.