REQUESTED BY: Esther L. Casmer, Chair
Nebraska Board of Parole
Prior to 1986, the Board of Parole was mandated to review the record of all offenders annually, regardless of their sentence structure and whether or not they were eligible for parole. In 1986, LB 1241 changed the language in § 83-192 to establish a schedule for review of cases based on the term of the sentence. This is the schedule that is still in effect in current legislation.
The schedule established in 1986 requires that the Board of Parole review the record of all committed offenders during their first year of incarceration and annually once the committed offender is within five years of his or her earliest parole eligibility date. The one exception is for those who have a parole eligibility date which is more than five but not more than ten years from his or her date of incarceration. These individuals receive their initial review during their first year of incarceration and then the Board must review their record annually starting when he or she is within three years of his or her earliest parole eligibility date. Those serving a minimum life sentence receive an initial review during the first year of incarceration and then must be reviewed every ten years thereafter until such time as their sentence is commuted at which time they would fit into one of the other categories depending on the commuted term.
The question then becomes if an inmate was convicted and sentenced prior to 1986, must the Parole Board grant him or her a yearly review since the law at the time of their sentencing required an annual review. It is our determination that the Board need not grant a yearly review to an inmate convicted and sentenced prior to 1986 unless the current legislation would require an annual record review based on the earliest parole eligibility of the offender.
In Moore v. Nebraska Board of Parole, 12 Neb. App. 525, 679 N.W.2d 427
(2004) the Nebraska Court of Appeals reviewed a case in which Appellant Moore argued that when the Pardons Board reviewed his record within sixty days of the expiration of his minimum term and deferred his case that he was entitled to a parole under § 83-1, 111(4) as it existed at the time of his conviction. Moore argued that the change in the statute after his conviction that would require a parole review once a year rather than a parole hearing violated the ex post facto clause of the U.S. Constitution. The Court addressed the ex post facto issue noting that:
 "A law which purports to apply to events that occurred before the law's enactment, and which disadvantages a defendant by creating or enhancing penalties that did not exist when the offense was committed, is an ex post facto law and will not be endorsed by the courts. State v. Gales, 265 Neb. 598, 658 N.W.2d 604 (2003) (citing State v. Gray, 259 Neb. 897, 612 N.W.2d 507 (2000), and State v. Urbano, 256 Neb, 194, 589 N, W.2d 144 (1999). This ex post facto analysis applies when a statutory amendment changes the punishment of a crime. Id." 12 Neb.App at 534, 679 N.W.2d at 435.
The court in Moore further held in regard to the challenged statute:
Like the changes of law at issue in [California v.] Morales [514 U.S. 499, 115 S.Ct. 1597 (1955)] and Garner [v. Jones, 529 U.W. 244,120 S.Ct. 1362 (2000)], the amendments to § 83-1, 111 at issue in the instant case do not modify the statutory punishment imposed for any offenses. The amendments also do not alter the standards for determining the initial date for parole eligibility or an inmate's suitability for parole. Rather, the amendments merely change the process by which the parole board reviews prisoners' parole possibilities. A prisoner is first reviewed by either two or more members of the parole board or by a person designated by the parole board. If the reviewer determines that a prisoner is reasonably likely to be **438 granted parole, a hearing before a majority of the parole board's members is held. There is no indication that a parole review, with fewer people reviewing the prisoner's case, would conclude differently than a parole hearing with a majority of the parole board's members present.
12 Neb. App. at 537, 679 N.W.2d at 437-8
Similarly, in the question you have presented, the fact that yearly reviews of an incarcerated individual's record do not begin until five, and in some cases three, years prior to that individual's earliest parole eligibility date does not alter the statutory punishment imposed; nor does it alter the standards for determining the initial date for parole eligibility or an inmate's suitability for parole. The amendments made by LB1241 in 1986 to the frequency of record reviews by the Parole Board merely change the process by which the parole board reviews prisoner's parole possibilities. Because it did not alter the punishment that a person might receive for the crime, it is not ex post facto. The changes to Neb. Rev. Stat. § 83-192 are ministerial directives to the Board and should be followed when determining the review schedule for incarcerated persons. Compliance with the current and effective review schedule is not ex post facto and does not violate the rights of those sentenced prior to 1986.
Again, it is our determination that applying the parole review schedule set forth in § 83-192 (1999) to those individuals incarcerated prior to 1986 does not constitute an ex post facto violation of the rights of those incarcerated individuals.
Sincerely,
JON BRUNNG
Attorney General
Linda L. Willard
Assistant Attorney General
Approved by: